# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **BLAKE M. VIA,** ) | |
| ) | |
| Petitioner, ) | Case No. 7:21CV00192 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **HAROLD W. CLARKE,** ) | Judge James P. Jones |
| ) | |
| Respondent. ) | |

*Dale R. Jensen, Dale Jensen, PLC, Staunton, Virginia, for Plaintiff; Rachel L. Yates, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Defendant.*

Blake Via, a Virginia inmate proceeding by counsel, brings this petition for habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2017 Augusta County Circuit Court conviction and sentence for armed burglary and possession of a firearm by a violent felon. The respondent has filed a Motion to Dismiss, and the matter is now ripe for decision. Upon review of the record, transcripts, and pleadings, I find that Via fully litigated his claims in the state's highest court, the Supreme Court of Virginia. Because that court's decision was not an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of federal law, I grant the respondent's motion.

I. Background.

On November 28, 2016, a grand jury for Augusta County Circuit Court indicted Via for armed burglary in violation of Virginia Code § 18.2-91 and possession of a firearm by one previously convicted of a violent felony, in violation of Virginia Code § 18.2-308.2. CCR[1] at 22–23. Following trial by the judge without a jury, the court convicted Via of both charges on June 7, 2017. Following a sentencing hearing on September 22, 2017, the court imposed a sentence of five years for the firearm conviction and twenty years, with sixteen years suspended for ten years, for the burglary conviction, to be followed by three years of supervised probation. CCR at 106–07.

Via appealed his convictions to the Court of Appeals of Virginia, alleging insufficiency of the evidence to support the charges. In affirming the convictions, the court summarized the evidence in the light most favorable to the Commonwealth as the prevailing party:

> [O]n the evening of August 17, 2016, Arthur Lilly was watching television with his girlfriend, Rachel, in his living room when appellant kicked in his front door shortly before 11:00 p.m. [Via] pointed a gun at Lilly's head and demanded to know where "Matthew" was. Lilly responded, "Dude, you've got the wrong house." Eventually, Lilly convinced [Via] to surrender the gun. [Via] placed the gun on a table in Lilly's house and walked

---

[1] Citations to the Augusta County Circuit Court record in *Via v. Commonwealth*, No. CR16-00435, are abbreviated as "CCR," referencing the typewritten page number in the bottom right corner of each page.

outside with Lilly. Shortly after they stepped outside, the police arrived and arrested [Via].

Deputy Sheriff Trevor Ross was one of the police officers who responded to Lilly's house. Ross spoke with Rachel and Lilly, and one of them directed Ross's attention to a black handgun lying on an ottoman inside the house, which Ross photographed before retrieving it. Ross collected the High Point 9mm (sic) and placed it in an exhibit box. At trial, the Commonwealth presented Ross with an exhibit box containing a gun, and asked Ross if the box contained the gun he collected from Lilly's house. Ross confirmed that it was. The exhibit box containing the gun bore [Via's] name, Lilly's address, a description of the gun inside as a "Hi-Point" with a specific model and serial number, and the date that the gun was collected. Investigator Steven Cason testified that he examined the gun in the box marked as Commonwealth's Exhibit Four and test-fired it. Cason testified that the gun was capable of expelling a projectile by means of explosion.

[Via] testified in his own behalf. While he acknowledged that he possessed "a gun" when he entered Lilly's home, he expressed uncertainty about whether the gun Cason test-fired was the same gun he possessed.

\* \* \* \*

[Via] was intoxicated on the night of August 17, 2016, and began texting his cousin Matthew from a bar at approximately 10:00 p.m. While he was at the bar, [Via] did not have a gun. In one of the texts, [Via] wrote, "Apparently you like disrespecting the fuck out your fam. . . . When I see you its on nigga [sic]." [Via left the bar, went home briefly, then drove to what he believed to be his cousin's home. At 10:51 p.m., [Via] texted his cousin and stated, "Nigga I'm at your door." Matthew replied, "Come [i]n pussy." [Via] responded, "Old botch I got g lun [sic]."

3

> [Via] claimed that he was "joking" with Matthew and intended him no harm. He maintained that he broke down the door to the house armed with a gun because he saw a car parked outside the house that he did not recognize and feared that his cousin's life might be in danger. The trial court rejected [Via's] account as incredible and noted that the exchange between the cousins was not "loving."

CCR at 116–17, 119.

Via then filed a petition for appeal in the Supreme Court of Virginia. The court refused his appeal by order entered May 22, 2019. *Via v. Commonwealth*, No. 181421 (Va. May 22, 2019). Via did not file a petition for certiorari with the United States Supreme Court.

On May 8, 2020, Via filed a petition for a Writ of Habeas Corpus in the Supreme Court of Virginia, alleging that his trial counsel had been ineffective in (1) failing to investigate and present a defense of mistaken identification of the gun and faulty chain of custody and (2) failing to secure the testimony of his cousin, Matthew, regarding Via's intent. The state court dismissed his petition, finding that Via established neither defective performance nor prejudice for either claim. The court denied his petition for rehearing on March 26, 2021.

## II. Claims Asserted.

Via timely filed his § 2254 petition in this court, raising the following claims of ineffective assistance of counsel:

A. Trial counsel failed to investigate and present defenses, including misidentification and faulty chain of custody of the gun produced as evidence against Via.

B. Trial counsel failed to secure testimony of Via's cousin, Matthew Via, to show reasonable doubt as to any specific intent to commit the offense of burglary.

Via raised both claims in his state habeas petition. Accordingly, his claims have been exhausted.

### III. STANDARD OF REVIEW.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). There is a presumption of correctness that attaches to the state court's finding of facts, which can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e).

When reviewing claims for ineffective assistance of counsel, courts also apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and that the performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a federal court reviews a state court's assessment of an ineffective assistance of counsel claim, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under *Strickland*. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).[2] In other words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

IV. ANALYSIS OF CLAIMS.

A. Failure to Investigate and Present Defense of
Misidentification and Faulty Chain of Custody of Gun.

When a petitioner alleges inadequate investigation, he must include specific allegations regarding what investigation was needed and what that investigation would have revealed. *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990). The only issue raised that arguably meets the required specificity is that counsel did not adequately challenge the chain of custody of the firearm, based on Deputy Ross' notation in the police report that the gun recovered from the scene at Lilly's home

---

[2] Unless otherwise indicated, here and throughout this opinion, internal quotation marks, citations, and alterations are omitted.

6

was a High Point 9mm, whereas the gun test-fired by Investigator Cason and displayed at trial was a High Point .45 caliber pistol. Based upon review of the trial transcript, the state habeas court's decision that petitioner failed to show deficient performance or prejudice is reasonable.

To establish deficient performance, a petitioner must establish that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id.* at 689–90. No such deficiency existed regarding counsel's investigation of the gun and chain of custody. On cross-examination, counsel highlighted the error in Ross' report:

> Q. So your recollection is that it is a 9mm, that we are talking about here?
>
> A. That's what I put in the report, that's what I recall but that's - - I saw the gun initially there and it was - - that was my perception.

CCR at 214–15. That was trial counsel's only question, which would not have been relevant but for the discrepancy in caliber of the gun. Counsel then asked the court not to release Deputy Ross, because he might need to recall him. *Id.* at 215. At this point in the trial, the Commonwealth had not introduced the gun, nor had there been any testimony that the gun was .45 caliber. Clearly, counsel was laying a foundation,

7

by locking Ross into acknowledging that he believed he recovered a 9mm weapon, so that he could bring Ross back to the stand after Investigator Cason testified about test-firing a .45 caliber firearm. This was a reasonable strategy, even though in hindsight it perhaps did not play out as hoped.

The Commonwealth, apparently recognizing where defense counsel was headed, produced the gun box, with a gun inside, and asked Ross to identify it on re-direct examination. Ross identified his handwriting on the evidence box, with date, time, location recovered, and Via's name. He confirmed that the gun (a .45 caliber weapon) was indeed the same gun he photographed and collected at the scene. He noted that the serial number on the gun was the same as the number he wrote on the box and in his report, and the gun was the same gun depicted in the picture introduced as Commonwealth's Exhibit 3, which photograph Ross had taken at the scene. The Commonwealth then introduced the gun into evidence as Exhibit 4.

Defense counsel also moved to strike the Commonwealth's evidence on the firearm charge, with his primary argument being that the chain of custody was insufficient. CCR at 219. Neither counsel's trial presentation nor closing argument suggest that he did not adequately investigate the chain of custody.

While there are other ways that trial counsel could have approached the chain of custody issue, choosing what evidentiary objections to make and what arguments to pursue are quintessentially matters of trial strategy committed to the professional

judgment of counsel. *McCoy v. Louisiana*, 138 S.Ct. 1500, 1508 (2018); *Gonzalez v. United States*, 553 U.S. 242 (2008). Via has failed to overcome the presumption that counsel's approach "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. As the Supreme Court has noted, "Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

Further, the state habeas court's decision that Via suffered no prejudice is also reasonable. To establish prejudice, a petitioner must show that there is a "reasonable probability that . . . the result of the proceeding would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The trial court, in denying counsel's motion to strike the evidence, stated that it did not matter "whether or not this is the gun," because the victim credibly testified that he was looking down the barrel of a gun in the defendant's hand, and that (along with Via's admission that he had a gun when he entered Lilly's house, CCR at 228, 232, was sufficient to support the charge of possession of a firearm. CCR at 221. Thus, even if the gun were kept out of evidence completely, the conclusion that the outcome would not have been different is more than reasonable.

Via has failed to establish either deficient performance or prejudice, and therefore, I must dismiss this claim.

B. Failing to Secure Cousin Matthew's Testimony

Trial counsel timely requested a subpoena for Matthew Via at the address provided to him by Via and his family. CCR at 186. Less than a week before trial, the subpoena was returned unserved, noting "No such address in Rockbridge County." *Id.* at 38. He tried to find a better address for Matthew without success, and the afternoon of trial, Via's family thought they could reach Matthew by phone, but it would take him at least an hour to drive to Augusta County, by which time the trial would probably be over. Asserting that Matthew was a critical defense witness, counsel requested a continuance. *Id.* at 186. The Commonwealth strenuously objected to a continuance, but the trial court, indicating that counsel had done what he was supposed to do, and the return date did not give him a chance to reissue another subpoena, seemed inclined to grant a continuance. *Id.* at 186–88. At that point, the Commonwealth's Attorney offered to stipulate that Matthew would testify he had previously lived in the home that Lilly occupied on the night Via broke down the door and that he and Via exchanged the series of text messages that the defense wished to introduce. If that stipulation were not acceptable to the defense, and the court granted the continuance, the Commonwealth would move to revoke Via's bond and set a new date. *Id.* at 188–89. After defense counsel consulted with Via, the parties stipulated Matthew's testimony. *Id.* at 189.

Via alleges that counsel was ineffective because he did not secure Matthew's presence in person for the trial. Yet, he fails to say what else counsel could have done to secure Matthew's presence. Counsel's duty is to provide reasonable representation, not to guarantee the outcome of events over which he has no control. *See United States v. Fiel*, 89 F. Supp. 3d 835, 841 (E.D. Va. 2015) (holding that counsel's erroneous prediction that the judge would sentence petitioner to something around 36 months did not constitute deficient performance). The state habeas court reasonably concluded that counsel was not deficient in his efforts to procure Matthew's presence for trial.

Via claims prejudice from Matthew's absence, because Matthew would have testified that the text messages and language contained in them were the normal way of joking communication between the two of them, and Matthew would have confirmed that Via lacked the specific intent to commit a felony when he broke into the house. The state habeas court also found no prejudice to Via from Matthew's absence. This finding was based on a reasonable determination of the facts and a reasonable application of federal law.

In the context of federal habeas review, the question is not whether a federal court would reach the same decision as the state court or even whether the federal court believes the state court's decision is correct. A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially

11

higher threshold." *Knowles v. Mirazayance*, 556 U.S. 111, 123 (2009). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Habeas relief is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Valentino v. Clarke*, 972 F.3d 560, 581 (4th Cir. 2020).

To establish prejudice, Via must show a reasonable likelihood of a different outcome if Matthew had testified in person. *Strickland*, 466 U.S. at 694. Matthew would not have been permitted to testify directly about what Via intended; such testimony would be speculative. It was not unreasonable for the state habeas court to conclude that Matthew's in-person corroboration that the text messages were playful would not have changed the outcome.

Because the state habeas court's determination of facts and application of law were not unreasonable, I must dismiss this claim.

## V. CERTIFICATE OF APPEALABILITY

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner based on the

law or that the issues presented were sufficiently weighty to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

I decline to issue a certificate of appealability because Via has not made a substantial showing of the denial of a constitutional right.

For the reasons stated, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

DATED: March 14, 2022

/s/ JAMES P. JONES
Senior United States District Judge